# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **BRIAN THOMPSON** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-20-1224-STE |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits (DIB) under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues, the Court **AFFIRMS** the Commissioner's decision.

**I.    PROCEDURAL BACKGROUND**

Mr. Thompson claims disability beginning April 10, 2014. After his application was denied, Administrative Law Judge (ALJ) Jodie B. Levine held an administrative hearing after which she denied benefits on June 13, 2018. On appeal, however, the Social Security Appeals Council remanded the case to the ALJ for further consideration of Mr. Thompson's

maximum residual functional capacity (RFC). Specifically, the Appeals Council directed the ALJ to reconsider a Residual Functional Capacity Questionnaire competed by Mark Newey, D.O., one of Mr. Thompson's treating physicians. The Appeals Council noted, in particular, that ALJ Levine had failed both to include a proper evaluation of Dr. Newey's treating source opinion and to state the weight she was giving that opinion.

ALJ Levine held a second hearing on February 10, 2020, at which a medical expert (ME) and a vocational expert (VE) testified. She issued a second unfavorable decision on February 28, 2020. (TR. 14-30). The Appeals Council affirmed the denial of benefits, and Plaintiff appealed to this Court.

## II.   THE ADMINISTRATIVE DECISION

The ALJ determined Mr. Thompson's insured status for DIB would expire on March 31, 2020. (TR. 17). The ALJ then followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 10, 2014, the alleged onset date. (TR. 17). At step two, the ALJ determined Mr. Thompson suffered from the following severe impairments: inflammatory (rheumatoid) arthritis, obesity, degenerative joint disease, and degenerative disc disease (TR. 17). At step three, the ALJ found that Plaintiff's impairments, considered alone or in combination, did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 17).

At step four, the ALJ concluded that Mr. Thompson retained the residual functional capacity (RFC) to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) except the claimant is able to occasionally balance, stoop, kneel, crouch, or climb ramps or stairs, but never crawl, climb ladders, ropes or scaffolds. He can frequently handle, finger, feel, grip, but should avoid exposure to unprotected height and workplace hazards such as dangerous machinery. The claimant only can sit, stand, or walk for 30 minutes at a time with all changes of position occurring at the workstation without taking a break.

(TR. 18).

With this RFC, the ALJ concluded that Mr. Thompson could not perform his past relevant work. (TR. 28). Thus, the ALJ presented the RFC limitations to the VE in the form of a hypothetical question to determine whether there were other jobs existing in sufficient numbers in the national economy that Plaintiff could perform. Given the RFC limitations, Mr. Thompson's age, and other relevant factors, the VE identified three jobs from the *Dictionary of Occupational Titles* that Mr. Thompson could still perform, even with his limitations. At step five, the ALJ adopted the VE's testimony and concluded that Mr. Thompson was not disabled based on his ability to perform the identified jobs. (TR. 29).

### III.   ISSUES PRESENTED

On appeal, Mr. Thompson asserts the ALJ erred in failing to consider all of his impairments at step two of the sequential evaluation; in failing to properly consider the medical source evidence; and in failing to perform a proper step-five analysis.

## IV.   STANDARD OF REVIEW

The Social Security Act authorizes payment of benefits to an individual with disabilities. 42 U.S.C. § 401, *et seq*. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death[,] or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than twelve months. *Barnhart v. Walton*, 535 U.S. 212 (2002).

The Court must determine whether Defendant's decision is supported by substantial evidence in the record and whether the correct legal standards were applied. *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, ___ U.S.___, 139 S. Ct. 1148, 1154 (2019). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations omitted).

The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citation, quotations, and alteration omitted).

Reviewing courts may not create post-hoc rationalizations to explain Defendant's treatment of evidence when that treatment is not apparent from the decision itself. *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) (citing, e.g., *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)).

## V. ANALYSIS

### A. The ALJ's Step Two Findings

Mr. Thompson contends the ALJ erred at step two of the sequential evaluation by failing to consider all his impairments. As noted, the ALJ identified severe impairments at step two and continued to assess the effects of Mr. Thompson's impairments through all five steps of the sequential evaluation. The Commissioner's position that the ALJ's findings at step two were sufficient is well-supported by case law. If an ALJ has made an explicit step-two finding that a claimant suffered from severe impairments, "'[t]hat [is] all the ALJ was required to do in that regard.'" *Brescia v. Astrue*, 287 F. App'x 626, 629 (10th Cir. 2008) (quoting *Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir. 2007)). Thus, the ALJ did not commit reversible error at step two. In fact, Mr. Thompson's true quarrel is not with the step two findings, but with the ALJ's findings at steps four and five, where the ALJ determined Mr. Thompson's RFC and found there were sedentary jobs he could perform.

Although Mr. Thompson's argument is couched in terms of a step-two error, his contention that the ALJ should have designated "fatigue, lethargy and malaise" as medically determinable impairments is best construed as an argument that the ALJ should have considered these symptoms in determining his RFC. *See Oldham*, at 1256-1257. In

support of his argument, Mr. Thompson points to three medical records out of the hundreds of pages of medical records submitted to the Court in the administrative record, each of which merely notes he reported such symptoms of fatigue, lethargy or malaise. (ECF 18:6); (TR. 585, 608, 624). But even when Mr. Thompson's argument is considered as a challenge to the ALJ's step-four findings, his argument fails. The ALJ acknowledged that Mr. Thompson occasionally complained of fatigue. (TR. 20). The medical records do not, however, consistently reflect reports of fatigue. And upon presenting as a new patient to Ringling Family Care in May 2018, Mr. Thompson denied experiencing fatigue. (TR. 20; 730). The ALJ's step two analysis is sound, and the ALJ considered and discussed Mr. Thompson's complaints of fatigue at all levels of the sequential evaluation.

## B. The ALJ's Consideration of the Medical Evidence

The Social Security Appeals Council specifically ordered the ALJ to reconsider the medical evidence and to convey what weight she was giving to each opinion—especially with respect to the opinion of Dr. Mark Newey, D.O., a treating physician. The ALJ complied with that mandate, applying the rules then in effect for analyzing treating physician opinions. (TR. 21-24).

The ALJ considered the check-box Residual Functional Capacity Questionnaire form completed by Dr. Newey in February 2017. (TR. 628-630). The questionnaire reflected Dr. Newey's opinion that Mr. Thompson could stand or walk (with a cane or other assistive device) less than two hours in an eight-hour workday and sit for only 3-4 hours in an eight-hour workday because of low back pain. (TR. 628). Dr. Newey stated side effects of Mr. Thompson's medications would include difficulties concentrating and

6

lethargy. His symptoms would, according to Dr. Newey, result in Mr. Thompson's missing more than four days of work per month. (TR. 629).

The ALJ declined to give Dr. Newey's opinion controlling weight, supporting her decision with cogent reasoning. First, the ALJ gave specific examples of the many ways in which Dr. Newey's opinion was contradicted by other evidence in the record, including opinions from state physicians, medical experts at two hearings, and his own records. (TR. 20-21). For example, the ALJ summarized Dr. Newey's findings when he attended Mr. Thompson at an examination shortly after Dr. Newey rendered the February 2017 opinion and stated the findings were "highly inconsistent" with the previously-assessed limitations:

> The claimant had normal range of motion to the cervical, thoracic, or lumbar spine; there were no signs of edema/swelling to the claimant's extremities; and the claimant retained normal muscle strength without signs of muscle wasting or atrophy. The claimant reported tenderness to the joints in the right upper extremity and swelling/deformity was present, but he retained normal range of motion, all joints were considered stable, there were no signs of crepitus, and he had no reports of pain with range of motion testing. The claimant's left upper extremity was normal, with no mention of pain or other abnormalities. He did report tenderness to the right lower extremity, but there were no abnormalities upon exam. There was no pain or other abnormality to the left lower extremity either. A neurological evaluation was performed, but, again, no abnormalities were found. Specifically, the claimant was fully oriented in all spheres, attention was normal (as was concentration), and the claimant retained normal reflexes, sensation, and motor function in all areas. The claimant was observed to walk with a normal gait, stand without difficulty, and displayed a normal mood and affect.

(TR. 21; 670-673).

The ALJ also noted Dr. Newey's own acknowledgement that his February 2017 opinion was based solely on "physical examination" with no supporting historical medical

records, clinical testing or functional testing. (TR. 20). The "limited weight" the ALJ gave to Dr. Newey's opinion is consistent with the medical records as a whole.

The ALJ also considered the medical opinion proffered by Dr. Lauren Southward, M.D. (TR. 25-26). Dr. Southward's opinion, like that of Dr. Newey, was rendered on a Residual Functional Capacity Questionnaire form dated July 2, 2019, after she had attended Mr. Thompson on only three separate occasions, the first being on December 7, 2018. Dr. Southward's opinion indicated serious limitations in his abilities to sit, (five minutes at a time between two to three hours per day) and stand or walk (fifteen minutes at a time (less than two hours per day). She opined that Mr. Thompson would have to sit in a recliner or lie down five hours per day and would be 75% less productive compared with a normal, healthy individual. (TR. 726-728). The ALJ declined to give Dr. Southward's opinion controlling weight, finding it was not supported by medically acceptable clinical and laboratory diagnostic techniques. Dr. Southward merely noted Mr. Thompson's diagnosis of rheumatoid arthritis and relied on his self-reported side effects from medication. (TR. 26). What is more, Dr. Southward's own medical records contradict her opinion. For example, the ALJ noted Mr. Thompson specifically denied having dizziness or somnolence, and the reports of all three visits to Dr. Southward indicated Mr. Thompson was doing well with his pain well-controlled. The records also noted he arrived by himself and appeared to be in no distress. (TR. 26; 730-736). The ALJ gave Dr. Southward's opinion minimal weight. (TR. 26).

The ALJ's findings regarding the opinions of Dr. Newey and Dr. Southward are supported by substantial evidence in the record, the ALJ followed the correct legal analysis, and this Court finds no error in the ALJ's analysis of the medical records.

In addition to the treating physician opinions, the ALJ also considered the testimony of the two medical experts one of which testified at each of the administrative hearings. Dr. Robert Smiley, M.D., appeared and testified at the first hearing on October 4, 2017. Dr. Smiley stated that, although the medical records contained a diagnosis for ankylosing spondylitis, there was no objective evidence such as X-rays to support the diagnosis. Dr. Smiley also testified that Dr. Newey's medical source statement, indicating that Mr. Thompson was essentially unable to function physically in almost any way, was undermined by treatment records demonstrating he was actually steadily improving with Humira treatments. (TR. 23). The ALJ gave Dr. Smiley's opinion great weight as it was supported by objective evidence while also giving the greatest deference to Mr. Thompson's self-reported limitations. (TR. 23).

The second medical expert, Dr. Subramaniam Krishnamurthi, M.D., testified at the February 10, 2020 hearing. He, too, found the diagnosis of ankylosing spondylitis to be without support, especially as Mr. Thompson retained a full range of motion in his spine. Dr. Krishnamurthi's opinion was that Mr. Thompson retained the RFC for light work. (TR. 27). The ALJ gave Dr. Krishnamurthi's opinion significant weight, but she found Dr. Smiley's opinion—that Mr. Thompson could perform sedentary work—to be better supported by the medical evidence of record. (TR. 27).

The ALJ applied the correct analysis to each medical opinion of record, and her conclusions are supported by substantial evidence in the record. In sum, remand is not required for a re-evaluation of the medical evidence.

### C. The ALJ's Analysis at Step Five

Mr. Thompson's third ground for relief purportedly challenges the ALJ's step-five decision. But Mr. Thompson's argument is actually based on his contention that neither the medical experts nor the ALJ, herself, considered all of his impairments, limitations from which should have been included in the RFC. In this argument, what the Commissioner characterizes as Mr. Thompson's "scattershot approach," is especially obvious. (ECF No. 22:1). As the commissioner notes, "cursory statements without supporting analysis and case law, fail to constitute the kind of briefing that is necessary to avoid application of the forfeiture doctrine." *Bronson v. Swensen*, 500 F.3d 1099, 1105 (10th Cir. 2007).

Mr. Thompson's challenge focuses on the hypothetical question the ALJ posed to the VE, based on his contention that the ALJ should have included limitations allegedly related to obesity. But Mr. Thompson neither listed obesity as an impairment in his application for benefits, nor did he substantiate this argument by citing to the medical record. Rather, his argument is supported solely by his own opinions about the effects of obesity in general.

The ALJ asked the VE about jobs that a hypothetical person the same age as Mr. Thompson, with the same education and the same limitations as Mr. Thompson, would still be able to perform. The ALJ included all limitations consistent with the RFC she

formulated; the ALJ was not required to include limitations in the hypothetical question that were inconsistent with the RFC. A hypothetical question need not include all limitations to which a claimant has testified. The ALJ properly restricted her questions to those limitations which she found to exist based upon substantial evidence in the record. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ's decision is based on substantial evidence in the record, the ALJ applied the correct legal standards, and the ALJ complied with the instructions for review mandated by the Appeals Council. As there is no basis for reversal, the Commissioner's final decision is affirmed.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on March 10, 2022.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE